# Assertion of Executive Privilege for Documents Concerning Conduct of Foreign Affairs with Respect to Haiti

Executive privilege may properly be asserted with respect to certain documents subpoenaed by the Committee on International Relations of the House of Representatives that concern the Administration's conduct of foreign affairs with respect to Haiti.

September 20, 1996

THE PRESIDENT
     THE WHITE HOUSE

**My Dear Mr. President:** You have requested my legal advice as to whether executive privilege may properly be asserted with respect to documents that are the subject of a subpoena issued to the Executive Secretary of the National Security Council ("NSC") by the Committee on International Relations of the House of Representatives. The documents concern the Administration's conduct of foreign affairs with respect to Haiti.

The Counsel to the President and the National Security Adviser recommend that you assert executive privilege with respect to all but four of the subpoenaed documents. Several of the documents record diplomatic meetings or other communications between the President, the Vice President, the National Security Adviser, or the Deputy National Security Adviser and the President or Prime Minister of Haiti. Other documents constitute confidential communications from NSC or State Department officials to the President or the Vice President. The remaining documents reflect and constitute the deliberations of the NSC and its staff in connection with their advice and assistance to the President regarding his policy and activities in Haiti. I understand that efforts have been made to accommodate the Committee's information needs with respect to these documents, but they have proven unavailing. The Counsel to the President and the National Security Adviser are appropriately concerned that the Committee's demand raises significant separation of powers concerns and that compliance with it would compromise your ability to conduct the foreign affairs of the United States, as well as the ability of the NSC to advise and assist you in discharging that constitutional responsibility.

The Office of Legal Counsel of the Department of Justice has reviewed the documents for which assertion of executive privilege has been recommended and is satisfied that they fall within the scope of executive privilege. I concur in that assessment. The Supreme Court has confirmed that the Constitution gives the President the authority to assert executive privilege to protect the confidentiality of diplomatic communications, Presidential communications, and White House deliberative communications. *See generally United States v. Nixon*, 418 U.S. 683, 705–13 (1974); *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 446–55 (1977). "The privilege is fundamental to the operation of Government and

5

inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. at 708.

More specifically, the Supreme Court has acknowledged the settled application of executive privilege with respect to "diplomatic secrets," such as the diplomatic communications with the leaders of Haiti that are subject to the Committee's subpoena, stating that "[a]s to th[is] area[ ] of Art. II duties the courts have traditionally shown the utmost deference to Presidential responsibilities." *Id.* at 710; *see also id.* at 706. "[I]t is elementary that the successful conduct of international diplomacy . . . require[s] both confidentiality and secrecy. . . . [I]t is the constitutional duty of the Executive . . . to protect the confidentiality necessary to carry out its responsibilities in the field[ ] of international relations . . . ." *New York Times Co. v. United States*, 403 U.S. 713, 728–30 (1971) (Stewart, J., concurring).

As Assistant Attorney General William H. Rehnquist concluded almost thirty years ago, "the President has the power to withhold from [Congress] information in the field of foreign relations or national security if in his judgment disclosure would be incompatible with the public interest." Memorandum from John R. Stevenson, Legal Adviser, Department of State, and William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: The President's Executive Privilege to Withhold Foreign Policy and National Security Information* at 7 (Dec. 8, 1969). History is replete with examples of the Executive's refusal to produce to Congress diplomatic communications and related documents because of the prejudicial impact such disclosure could have on the President's ability to conduct foreign relations. *See* Memorandum from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, 6 Op. O.L.C. 751 (1982) (compiling historical examples).

It is equally well established that executive privilege applies to confidential communications to and from the President or Vice President and to White House and NSC deliberative communications. The Supreme Court has recognized "the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. at 708.

Under controlling case law, in order to justify a demand for material protected by executive privilege, a congressional committee is required to demonstrate that the information sought is "demonstrably critical to the responsible fulfillment of the Committee's functions." *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974) (en banc). And those functions must be in furtherance of legitimate legislative responsibilities of Congress. *See McGrain v. Daugherty*, 273 U.S. 135, 160 (1927) (Congress has over-

sight authority "to enable it efficiently to exercise a legislative function belonging to it under the Constitution").

"Since Congress may only investigate into those areas in which it may potentially legislate or appropriate, it cannot inquire into matters which are within the exclusive province of one of the other branches of the Government." *Barenblatt v. United States*, 360 U.S. 109, 111–12 (1959). The Committee has sought to justify its demand based on its need for information on "Administration policy toward human rights abuses in Haiti" and "the Administration's knowledge of death squad activities in Haiti over the last two years." Letter for Jack Quinn, Counsel to the President, from Benjamin A. Gilman, Chairman, Committee on International Relations at 2 (Sept. 19, 1996). However, the conduct of foreign affairs is an exclusive prerogative of the executive branch. *See, e.g., United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) (the President is "the sole organ of the federal government in the field of international relations"); *Chicago and Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (the President is "the Nation's organ for foreign affairs"); 5 Paul L. Ford, *The Writings of Thomas Jefferson* 161 (New York, The Knickerbocker Press 1895) ("[t]he transaction of business with foreign nations is executive altogether"). Thus, there is a substantial question of the executive branch's conduct of foreign affairs or its deliberations relating thereto.

Although the question of Congress's oversight authority in this context must be viewed as unresolved as a matter of law, it is clear that congressional needs for information in this context will weigh substantially less in the constitutional balancing than a specific need in connection with the considerations of legislation. Based on the Office of Legal Counsel's review of the documents for which assertion of executive privilege has been requested, and conducting the balancing required by the case law, *see Senate Select Committee*, 498 F.2d at 729–30; *United States v. Nixon*, 418 U.S. at 706–07, I do not believe that access to these documents would be held by the courts to be "demonstrably critical to the responsible fulfillment of the Committee's functions." *Senate Select Committee*, 498 F.2d at 731.

In conclusion, it is my legal judgment that executive privilege may properly be asserted in response to the Committee's subpoena.

Sincerely,

JANET RENO
*Attorney General*